FILED
COURT OF APPEALS
DIVISION II

2014 JUL 15 AM 10: 44

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Parentage of: | No. 43920-4-II |
| H.A.A., A.K.A., and B.M.A. | |
| Minor Children, | UNPUBLISHED OPINION |
| and | |
| MICHAEL J. AMARAL, | |
| Appellant/Father, | |
| and | |
| DEBORAH M. PARLARI, | |
| Respondent/Mother. | |

MAXA, J. — Michael Amaral appeals a final parenting plan appointing the children's mother, Deborah Parlari, as the primary residential parent. He assigns error to many of the trial court's factual findings in the final parenting plan, the trial court's conclusion that Parlari should be the primary residential parent, and various other rulings and pretrial decisions. Finding no errors, we affirm.

FACTS

Amaral and Parlari are the parents of three minor children, HAA (born 2000), AKA (born 2002), and BMA (born 2006). Amaral and Parlari had a tumultuous relationship during which they separated and reconciled a number of times between 1998 and 2008.

In May 2008, Parlari accused Amaral of forcing her to have sex against her will. As a result, Amaral was charged with rape, false imprisonment, and assault. Parlari and the children moved to her parents' home in Buckley. The felony charges against Amaral were dismissed, apparently after Amaral produced a tape of an illegally recorded telephone conversation in which Parlari made statements that arguably called into doubt her rape allegations.

In September 2008, Amaral filed this parentage action seeking to establish his parentage and to develop a parenting plan for the three children. The case was extremely contentious and took nearly four years from its filing date to the trial date. Amaral ultimately moved for summary judgment on the parentage issue. The trial court granted his motion and entered an order adjudicating him the father of all three children. That order is not challenged on appeal.

The case went to trial on the parenting plan issues. Both Amaral and Parlari sought to be the children's primarily residential parent. Amaral, Parlari, and the court-appointed Guardian Ad Litem (GAL) testified at the trial.[1] The parties' testimony about their relationship with each other and with the children conflicted. Amaral testified that he was a devoted father and had served as the children's primary caretaker until the parties separated in May 2008. He testified

---

[1] There are references in the report of proceedings to other witnesses testifying at the trial, but the report of proceedings designated and provided to this court on appeal does not include any other witness testimony.

that Parlari usually left for work about 2:30 p.m. and worked until midnight, and that he stayed home and watched the kids full time because he did not want them in daycare. According to Amaral, Parlari neglected the children, inflicted domestic violence upon him, and fabricated rape allegations against him in May 2000 and again in May 2008.

On the other hand, Parlari testified that she was the children's primary caretaker and that she arranged for child care while she was at work even though Amaral only worked sporadically. She stated that Amaral watched the children only during a three month period in the fall of 2006. According to Parlari, Amaral was interested in spending time with the children only in public, he ignored the children in private, and he was controlling and abusive to her. The GAL testified that the children were doing well in Parlari's care and recommended that Parlari continue to be the primary residential parent and that Amaral receive supervised visitation.

In its oral ruling, which was incorporated by reference into the final findings of fact and conclusions of law, the trial court analyzed the requisite factors under RCW 26.09.187(3) and made detailed findings of fact. The court ruled that based on the statutory criteria as well as other factors, it would be in the best interest of the children to primarily reside with Parlari. The court stated that Amaral's proposed parenting plan would be a material disruption in the children's routine and could potentially separate siblings, and that transferring custody would not outweigh the advantage of keeping the children in their current home and family setting.

Based on its findings, the court issued a final parenting plan designating Parlari as the primary residential parent for the children. The court limited Amaral's residential time to every other weekend. The court also made a finding that pursuant to RCW 26.09.191, Amaral's residential time and decision making authority must be limited because of his (1) history of acts

of domestic violence or an assault or sexual assault, and (2) abusive use of conflict. The court further ruled that Amaral was required to submit to a complete psychological evaluation and a domestic violence assessment before a full residential schedule was designated. Amaral unsuccessfully moved for reconsideration, a new trial, reopening of the trial, amendment of the findings and conclusions, and presentation of additional findings and conclusions. Amaral appeals.

## ANALYSIS

### A.   PRETRIAL ORDERS, RULINGS, AND OMISSIONS

#### 1.   Allowance of Argument in Motion Hearings

Amaral argues that allowing Parlari to "present her version of the facts and argument" at every motion hearing, despite failing to file documents responsive to his motions, violated basic principles of due process of law and the court rules. Br. of Appellant at 18-21. Specifically, he alleges that the trial court violated Pierce County Local Rule (PCLR) 94.04(c)(1), which provides that family law motions shall be "heard on the basis of affidavit and/or declaration." He argues that the trial court's allowing Parlari to respond orally at the hearing deprived him of an opportunity to present a formal written reply, and it prejudiced him because Parlari was not forced to go on the record with a written response, which would have confirmed her responsive allegations and pinned down her testimony.

However, Amaral does not contend, and nothing in the appellate record indicates, that he brought the alleged rule violation to the attention of the trial court by objecting to Parlari's oral argument at motion hearings. Therefore, the issue is waived unless it is a manifest error affecting a constitutional right. RAP 2.5(a). Amaral alleges that the procedure violated due

4

process, but he provides no authority for this argument. "[P]arties . . . raising constitutional issues must present considered arguments to this court. '[N]aked castings into the constitutional sea are not sufficient to command judicial consideration and discussion.' " *State v. Bonds,* 174 Wn. App. 553, 567 n.3, 299 P.3d 663 (2013) (second alteration in original) (citation omitted) (quoting *State v. Johnson,* 119 Wn.2d 167, 171, 829 P.2d 1082 (1992)). Therefore, we do not further consider Amaral's argument.[2]

2. Denial of Motion to Remove or Disqualify the GAL

Amaral argues that the trial court erred by denying his motion to remove the GAL, based on his allegations that the GAL failed to treat him in a fair and impartial manner, failed to perform her job, was unprofessional in her conduct, and was prejudiced against him in violation of RCW 26.12.175 (which governs the interactions of courts and GALs) and the Guardian ad Litem Rules (GALR) adopted by our Supreme Court. We hold that the trial court did not abuse its discretion in denying Amaral's motion.

---

[2] Even if Amaral preserved the issue for appeal, he has not demonstrated that a rule violation occurred or that it prejudiced him. PCLR 94.04(c)(1) provides that hearings on motions shall be heard on the basis of affidavit and/or declaration. This means that any *evidence* presented in motion hearings will be by sworn affidavits or declarations rather than presented by live testimony under penalty of perjury. Amaral has not shown that Parlari presented evidence in the form of live testimony at the motion hearings. And even if we assume that Parlari was allowed to provide live testimony and argue at motion hearings in which she did not file responsive documents, Amaral has not directed us to any authority that restricts a party from doing so. Moreover, a party is not required to respond in writing to an opposing party's motion. *See* PCLR 94.04(c)(3) ( "Response documents, including briefs or memoranda, *if any,* shall be filed with the Clerk") (emphasis added). In addition, if Amaral wished to "pin[ ] down" Parlari's testimony, he could have done so in a deposition. Br. of Appellant at 19. Parlari's decision not to respond to his pretrial motions did not prejudice Amaral.

Initially, Amaral did not provide us with either the trial court's written order or the transcripts of the hearing on his motion to remove the GAL. Therefore, we do not have the benefit of the trial court's reasoning for its decision and do not know if the trial court instructed the GAL to take any specific action in response to Amaral's grievances. Under RAP 9.2(b) the appellant has the burden to provide a record sufficient to review the issues raised on appeal, and the trial court's decision must stand if this burden is not met. *State v. Tracy*, 158 Wn.2d 683, 690-91, 147 P.3d 559 (2006); *Stiles v. Kearney*, 168 Wn. App. 250, 259, 277 P.3d 9, *review denied*, 175 Wn.2d 1016 (2012). Because Amaral has failed to provide a record to support his challenge to the order denying his motion to remove the GAL, we are not required to address this claim.

Nevertheless, based on the record we do have, Amaral's argument fails. The decision to remove a GAL is within the trial court's discretion. *In re Marriage of Bobbitt*, 135 Wn. App. 8, 23, 144 P.3d 306 (2006). The trial court's decision will not be disturbed absent an abuse of discretion, which occurs when the court's discretion is " 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.' " *Bobbitt*, 135 Wn. App. at 24 (quoting *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

Amaral argues that the trial court should have removed the GAL because she failed to treat him in a fair and impartial manner, failed to perform her job, and was prejudiced against him in violation of RCW 26.12.175 and the GALRs. In the trial court, Amaral referenced a grievance letter he filed with the WSBA making several similar allegations. Amaral also provides numerous examples of the GAL's alleged shortcomings throughout the case in his appellate briefing. The majority of Amaral's grievances concern his disagreement with the

6

GAL's judgment and his view that the GAL was prejudiced against him and unfairly supported Parlari. A thorough review of the record reveals that the trial court did not abuse its discretion in denying Amaral's motion to remove the GAL despite Amaral's allegations of misconduct.

We do note Amaral's troubling allegation that the GAL did not meet or interview him which, if true, would violate GALR 2(b), (f), and (g). *See Bobbitt*, 135 Wn. App. at 26 (GAL's refusal to interview Bobbitt violated GALR). Although the limited record before us on appeal confirms that the GAL did not meet Amaral in person or interview him over the phone, it does show that she had substantial contact with him by e-mail, that she had frequent contact with both parties, and that she reported both parties' positions to the trial court. As a result, the trial court's refusal to remove the GAL on this basis was not an abuse of discretion. Nevertheless, the GAL should have given the parties similar opportunities and access to her, which in Parlari's case included an in person interview and phone contact. Maintaining the appearance of fairness and impartiality is an end in itself and more efforts in that regard may have reduced Amaral's escalating anxiety and frustration about the case.

We hold that the trial court did not abuse its discretion in denying Amaral's motion to remove the GAL.

3. Independent Review of GAL's Performance

Amaral asks us to independently review the GAL's performance throughout the case. However, that is not the function of the appellate court and we will not undertake such review.

Nevertheless, we partially address Amaral's claim to the extent that he is arguing that the alleged deficiencies caused the GAL's trial testimony and recommendations to be biased and uninformed. In *Bobbitt*, we reiterated that the impact of the GAL's actions and inactions

7

depends on the circumstances of the case. 135 Wn. App. at 28. Where, as here, the case is heard by a judge rather than a jury the GAL's impact is less significant because " '[j]udges understand that the GAL presents one source of information among many, that credibility is the province of the judge, and can without difficulty separate and differentiate the evidence they hear.' " *Bobbitt*, 135 Wn. App. at 28 (quoting *In re Guardianship of Stamm*, 121 Wn. App. 830, 841, 91 P.3d 126 (2004)).

Through his own testimony as well as cross-examination of the GAL, Amaral had the opportunity to convey to the trial court why he thought the GAL was uninformed and biased against him. The GAL's credibility and the persuasiveness of her testimony were for the judge to determine and are not subject to review on appeal. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004). Therefore, we decline to reverse the trial court's denial of Amaral's motion to remove the GAL on this basis.

4. Case Files of Other Parentage Actions

Amaral argues that the trial court erred by failing to issue subpoenas for pleadings and documents from parentage proceedings (relating to Parlari's other children) in other counties. He asserts that those case files contained valuable information about Parlari's parenting of her older children, and that one contained a psychological evaluation of Parlari[3] that substantially contributed to her losing custody of her son. Amaral also asserts that those case files were sealed and that a court order was necessary to obtain them. He states that the trial court refused his

---

[3] The court ordered Parlari to provide Amaral's attorney with her psychological evaluation. Parlari's attorney eventually filed the psychological evaluation with the court.

8

repeated requests to order the release to Amaral or the GAL of those files from actions involving Parlari's other children. This argument fails.

The record shows that Amaral moved the court for an order requiring Parlari to surrender her complete parentage files. A memorandum of journal entry shows that on that same day the court heard Amaral's motion for an ex parte restraining order, but declined to sign any orders because an agreed order already was in place. The record does not reflect if the court ruled on Amaral's motion for Parlari to surrender the parentage action files. The record also contains an "Order [on Amaral's] Motion Filed May 16, 2012," which provides that "[t]he court has no authority to request such production records as it presumes said records are public [and] anyone can access them." Clerk's Papers (CP) at 595-96.

Because the record before us on appeal does not contain Amaral's motion, it is difficult for us to discern the meaning of the trial court's order. And because Amaral's claim of error is not supported by pertinent authority, references to the record, or meaningful analysis, we do not consider it. RAP 10.3(a)(6). [4]

5. Dentist Visits

Amaral argues that the trial court erred by denying his motions to order Parlari to take the children to the dentist. But the final parenting plan requires that the children be taken to the dentist at least twice a year unless the dentist recommends otherwise, and Amaral does not appear to challenge this provision of the final parenting plan. Therefore, the trial court's failure

---

[4] *See also Cowiche Canyon Conservancy v. Bosley,* 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (arguments not supported by authority); *State v. Elliott,* 114 Wn.2d 6, 15, 785 P.2d 440 (1990) (insufficient argument); *State v. Camarillo,* 54 Wn. App. 821, 829, 776 P.2d 176 (1989) (no references to the record), *aff'd,* 115 Wn.2d 60, 794 P.2d 850 (1990).

to enter a temporary order regarding the children's dental care is mooted by its entry of the final order (discussed below). *See State ex rel. Carroll v. Simmons*, 61 Wn.2d 146, 149, 377 P.2d 421 (1962) (the temporary order merges with the final judgment and any question as to the propriety of the temporary order becomes moot).

6.    Benedetti Contact with Children

Amaral argues that the trial court failed to restrain Parlari from allowing her friend Benedetti to have contact with the children. Amaral argues that he filed several motions urging such restraint, but the trial court denied the motions. Amaral sought the restraining order because Benedetti allegedly had a history of domestic violence, and a Whitman County order had allowed him only limited supervised visitation with his own child. The GAL also recommended that Benedetti should not have unsupervised contact with HAA. As we have noted in the preceding section of this analysis, to the extent Amaral challenges the trial court's denial of his motions filed prior to trial, those arguments are mooted by entry of the final parenting plan.[5] *See Simmons*, 61 Wn.2d at 149.

7.    Trial Court's Comments Related to Not Retrying the Rape Case

Amaral argues that the trial court erred by ruling that "this is not going to be a retrial of a rape case," and "I'm not going to retry this case in terms of whether a rape occurred or did not occur." Report of Proceedings (RP) at 400; Supplemental Report of Proceedings (SRP) (Apr. 10, 2012) at 4. However, the two statements by the trial court were not rulings, but merely

---

[5] Amaral's claim that the trial court erred by not restricting contact with Benedetti in the final parenting plan is addressed below. *See infra* C.2.

directions to counsel that the court preferred the parties to focus on the parenting plan issues rather than on whether or not Amaral had raped Parlari.

Amaral alleges that the trial court's refusal to retry the rape case and its limiting the number of witnesses allowed (addressed in the next section) prevented him from defending himself from the rape allegations, which he considered the paramount issue in the parenting case. However, he does not allege with any particularity that the trial court's comments prevented him from presenting important evidence, such as if the court would have excluded relevant evidence related to the rape allegation. The trial court ruled that the audio recording was inadmissible, but that ruling was based on a statute (discussed later), not because the evidence was related to the rape allegation. Amaral's general and speculative assertion that he would have presented more and better evidence if he would have been able to "try" the rape case is not persuasive.

Amaral fails to show that the trial court's comments had any real effect on the parenting plan proceedings, let alone a prejudicial effect. Accordingly, Amaral's claim fails.

8. Limiting Number of Witnesses

Amaral argues that the trial court erred by limiting to five the number of witnesses each party could call at trial. He argues that he needed additional witnesses to effectively refute the rape allegation and show that Parlari was using the allegations to gain an advantage in the proceedings. Amaral also asserts that the limited number of witnesses prevented him from

11

rebutting the GAL's testimony and reports because he could not examine the persons who made out-of-court statements that she relied on to form her opinions.[6]

Amaral does not provide argument and citation to authority to support his argument that the trial court committed error by limiting the number of witnesses. Therefore, we do not need to consider his assignment of error further.[7] RAP 10.3(a)(6). Accordingly, Amaral's claim fails.

9.  Telephonic Testimony

Amaral argues that the trial court erred by not allowing some of his witnesses to testify by telephone. For support, he points to CR 43(a)(1), which states that "[f]or good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location." We review a trial court's ruling on whether or not to permit telephonic testimony for an abuse of discretion. *In re Marriage of Swaka*, 179 Wn. App. 549, 553, 319 P.3d 69 (2014). We find no abuse of discretion here.

---

[6] Amaral also alleges that the trial court improperly criticized his witness and exhibit list. The court was critical of both parties for failing to provide their witness lists in a timely manner. The court was concerned with avoiding a trial by surprise and remaining within the allotted time for trial. Obviously, Amaral's 60-person witness list was more problematic in this regard than Parlari's list, which included only the parties, the GAL, and the reunification counselor. However, the record shows that the trial court resolved the witness list issue respectfully and did not improperly criticize Amaral. We reject his assertions to the contrary.

[7] Even were we to address the merits of this claim, Amaral failed to object to the trial court's ruling and the record does not show that he was prejudiced by it. If Amaral needed additional witnesses, he should have taken exception to the trial court's pretrial ruling, requested additional witnesses, and made a detailed offer of proof of what the witness would have testified to and why the testimony was needed. In addition, Amaral fails to show prejudice because he has not shown that he exhausted his allotment of five witnesses. The record designated on appeal contains testimony only from the parties and the GAL. And based on the record provided to us, the only witness Amaral called to testify was himself.

During trial, Amaral sought permission from the court to have an expert witness, Bill Notarfrancisco, testify by telephone later that morning, as scheduled. Amaral told the trial court that Notarfrancisco was in town but he had a full schedule and was unable to cancel any appointments to testify in court. Parlari objected to the proposed telephonic testimony. The trial court inquired whether the witness could come in and testify another day, and Amaral indicated that he would be available on a later date.

The trial court ruled that Notarfrancisco could not testify telephonically but offered to allow him to testify out of order, including after Amaral rested his case and any time before Parlari rested hers.[8] The trial court explained that it was important for the witness to testify live so that the court could assess the witness's credibility. The trial court also indicated that it was generally more lenient with lay witnesses, but it expected expert witnesses to be available for live testimony or to have dealt with availability issues well in advance.

Amaral also requested that his priest, Father Peter, be allowed to testify telephonically. After the trial court had taken its noon break, Amaral stated, "Father Peter has contacted us, and he's interested in testifying by phone this afternoon. Is that something that's acceptable to counsel?" RP at 430-31. Again Parlari objected to the proposed telephonic testimony. The trial court inquired whether the priest would be testifying as a fact witness or in the capacity of a treating expert. Amaral stated that he had a counseling relationship with the priest and that the priest would be testifying about those counseling sessions. The trial court denied Amaral's request to allow the priest to testify by telephone and made reference to the court's earlier

---

[8] The record does not reflect whether Notarfrancisco did later testify live.

13

statement that it expected expert witnesses to be available for live testimony. Because Amaral did not provide this court with the full trial transcript, we do not know if Father Peter testified at some later point. Amaral pointed out that the GAL was allowed to testify telephonically[9] and argued that not similarly accommodating Amaral's witnesses was unfair. The trial court explained that the circumstances were different – the GAL's unavailability and issues regarding her appearing live were the subject of a pretrial motion while Amaral's request was a last minute request on the morning the expert witness was scheduled to testify and there was no advance notice that the witness would not be available to testify live.

Because Amaral did not present the trial court with "good cause in compelling circumstances" as required under CR 43(a)(1), we hold that the trial court did not abuse its discretion in denying Amaral's requests to allow Notarfrancisco and Father Peter to testify by telephone.

10. Ignoring Allegations of Perjury

Amaral argues that the trial court erred by ignoring allegations that Parlari had committed perjury. He argues that Parlari testified at trial that she had given birth to only six children born alive, but she had previously "testified" on April 23, 2010, that she had given birth to nine children. This claim fails.

The right to a fair trial includes the exclusion of perjured testimony. *In re Pers. Restraint of Benn*, 134 Wn.2d 868, 936, 952 P.2d 116 (1998). But no perjury has been established here. Amaral cites to an excerpt of an April 23, 2010 hearing in which Parlari states that she had nine

---

[9] Amaral does not assign error to the trial court's allowing the GAL to testify by telephone, nor could he, because the record does not show that he preserved the issue by objecting at trial.

14

children. The record on appeal does not include the entire hearing transcript and the part that is included does not show that Parlari was providing sworn testimony. Parlari was pro se at the time and was most likely responding to the court's inquiry in open court without having been placed under oath.

Moreover, Amaral's claim here is nothing more than a disagreement with the trial court's credibility assessments and the weight the trial court placed on Parlari's allegedly inconsistent statements about the number of children she had. Parlari testified that she had been pregnant nine times, had given birth to six children (including one child that she gave up for adoption as an infant), and she did not know why the GAL and Amaral thought she had given birth to ten children. Amaral also questioned her on these issues during cross-examination.[10] We cannot retry the facts on appeal, and we will defer to the trier of fact for purposes of resolving conflicting testimony and evaluating the persuasiveness of the evidence and credibility of the witnesses. *Thompson v. Hanson*, 142 Wn. App. 53, 60, 174 P.3d 120 (2007), *aff'd*, 168 Wn.2d 738, 239 P.3d 537 (2010). Therefore, Amaral's claim fails.

11. Excluded Audio Recording

Amaral argues that the trial court erred by excluding a key piece of evidence – an audio recording of a phone call between him and Parlari. According to Amaral, the recording was a major factor in the prosecutor's dropping the rape charges against him. As a result of the recording, Amaral was charged and pleaded guilty to unlawful recording of a private

---

[10] Amaral alleges that the trial court denied him the opportunity to examine Parlari about what happened to the other children. The trial court stopped Amaral from questioning Parlari about the adopted infant because the information was not relevant to the proceeding. In addition, Parlari could provide no relevant information about children that she denied ever having had.

conversation in violation of RCW 9.73.030, .080, which is a gross misdemeanor. Parlari moved to exclude the recording and any discussion of the conversation at trial because it was the result of an illegal recording. The trial court agreed and suppressed the evidence.

We review a trial court's legal conclusions on a motion to suppress de novo. *State v. Roden*, 179 Wn.2d 893, 898, 321 P.3d 1183 (2014) (reviewing de novo whether evidence was admitted in violation of the Washington Privacy Act). Washington's Privacy Act, chapter 9.73 RCW, prohibits recording of any "[p]rivate conversation, by any device electronic or otherwise designed to record or transmit such conversation regardless how the device is powered or actuated without first obtaining the consent of all the persons engaged in the conversation." RCW 9.73.030(1)(b). Evidence obtained in violation of the act is inadmissible for any purpose in any civil or criminal trial with certain exceptions not applicable here. RCW 9.73.050; *Roden*, 179 Wn.2d at 899.

Amaral does not claim that the Privacy Act does not apply to the recording. Instead, he argues that the trial court erred in excluding it because constitutional considerations override the Privacy Act. He relies on *State v. Baird*, 83 Wn. App. 477, 922 P.2d 157 (1996). In *Baird*, Division One of this court balanced the interests promoted by the Privacy Act against a criminal defendant's constitutional right to present a defense. 83 Wn. App. at 483. To do so, the court examined the purposes for which the defendant sought introduction of the protected evidence and the likely effect on the outcome to determine the effect of exclusion on his defense. *Baird*, 83 Wn. App. at 483. The defendant in *Baird*, who was accused of brutally attacking and disfiguring his wife, argued that hearing the tape the day before the assault "triggered" the assault because he concluded from it that his wife was having an affair. 83 Wn. App. at 479,

16

483. The court noted that the tape did not clearly show she was having an affair, but even if it could be interpreted that way or to give the defendant a reason for believing so, other evidence provided the same inference. *Baird*, 83 Wn. App. at 483. The defendant's theory of the case was that he did not intend to cause great bodily harm because he was impaired by his years of drinking and his paranoid personality disorder. *Baird*, 83 Wn. App. at 484. His experts supported his medical disorder and testified that he was probably experiencing an alcoholic blackout at the time of the assault; but no expert testified that there was a specific triggering event, such as hearing the tape. *Baird*, 83 Wn. App. at 483-84.

The court held that in this evidentiary context, exclusion of the tape did not significantly constrict the vitality of his defense. *Baird*, 83 Wn. App. at 484. The tape did nothing more than confirm his paranoid belief in his wife's infidelity. *Baird*, 83 Wn. App. at 484. The court held that the tape was not so connected to the issue of guilt or innocence that its exclusion prevented the defendant from relating his version of the events and thus affected the outcome of the trial. *Baird*, 83 Wn. App. at 484. Because the tape was merely collateral, the interests served by the privacy act justified the limitation of the defendant's right to present his defense, and it was properly excluded. *Baird*, 83 Wn. App. at 484.

Here, Amaral argues it was inappropriate to exclude the recorded conversation because unlike in *Baird*, the audio recording was central to the issue in the case – whether he had raped Parlari – and that the enforcement of the Privacy Act resulted in an unconstitutional limitation on his constitutional right to present his custody case. Amaral is correct that he has a fundamental interest in parenting his children. *See In re Marriage of King*, 162 Wn.2d 378, 383, 174 P.3d 659 (2007) (recognizing that the fundamental nature of the parent-child relationship is entitled to

17

constitutional significance); *In re Dependency of J.A.F.*, 168 Wn. App. 653, 667, 278 P.3d 673 (2012) (parental rights are a fundamental liberty interest protected by the United States Constitution). Whether a parent is a perpetrator of domestic violence and whether a parent has falsely accused the other parent of domestic violence in order to gain an advantage in custody proceedings are relevant in an action to determine the primary residential parent. However, the trial court's objective was to determine what was in the best interest of the children based on all of the circumstances presented. Here, the tape did not clearly convey that Parlari had falsely accused Amaral of rape, although it could be interpreted that way. And there was already other evidence in the record that, if believed, supported Amaral's contention that Parlari had falsely accused him of rape. For example, Amaral testified that he did not rape Parlari and he testified in detail about her alleged motivations for making the allegations. He also testified that the prosecutor dropped the felony charges.

We hold the tape was not so vital to the parentage action that its exclusion prevented Amaral from presenting his case that it was in the children's best interests to make him the primary residential parent. As in *Baird*, 83 Wn. App. at 484, the tape was collateral and the interests served by the Privacy Act justified the limitation on Amaral's right to present the tape in his parentage action. Therefore, we hold that the trial court did not err in excluding the tape.[11]

---

[11] Amaral also argues that even if the tape was excludable, the trial court should not have excluded his testimony about the contents of the conversation. We do not address his argument because it is moot. Despite the trial court's ruling, Amaral testified to the contents of the recorded conversation, the fact that it was recorded, and the reason why he recorded it without Parlari's knowledge. Parlari objected after the fact, and then stated, "[I]t's out there, you heard it, and I withdraw any objection I had to it." RP at 249. Because Amaral testified to the contents of the conversation (and more) and Parlari acquiesced to its admissibility, there is no need to review the trial court's unenforced ruling.

12. Entry of Final Orders Without Notice

Amaral argues that the trial court erred by entering final orders without notice to him or his attorney. Amaral is correct that the trial court erred in entering the orders, but the record does not support that the error was deliberate. And despite the error, Amaral fails to show that it prejudiced him. Therefore, his claim fails.

CR 54(f)(2) provides:

(2) *Notice of Presentation.* No order or judgment shall be signed or entered until opposing counsel have been given 5 days' notice of presentation and served with a copy of the proposed order or judgment unless:

(A) Emergency. An emergency is shown to exist.

(B) Approval. Opposing counsel has approved in writing the entry of the proposed order or judgment or waived notice of presentation.

(C) After Verdict, etc. If presentation is made after entry of verdict or findings and while opposing counsel is in open court.

Failing to give notice under CR 54(f)(2) generally renders a judgment invalid. *Burton v. Ascol*, 105 Wn.2d 344, 352, 715 P.2d 110 (1986). But such a judgment is valid unless the complaining party shows resulting prejudice. *Burton*, 105 Wn.2d at 352. A party alleging injury is not prejudiced if it is able to timely appeal and argue any issues it wishes to raise. *Burton*, 105 Wn.2d at 352-53; *Soper v. Knaflich*, 26 Wn. App. 678, 681, 613 P.2d 1209 (1980).

Amaral had notice of the presentation hearing because the date was set in open court in which his counsel was present. However, Amaral's counsel did not appear at the hearing because of confusion caused by opposing counsel's office: Parlari's counsel informed Amaral's counsel that the presentation hearing would have to be postponed and requested that Amaral's counsel respond with his availability for three possible dates to set the hearing over, obtained

from the court's judicial assistant. But Parlari's counsel never sought the continuance. And because of divided responsibilities within his office, Parlari's counsel was not aware of the mix-up with opposing counsel and mistakenly represented to the court that Amaral's counsel had been provided with a copy of the proposed final orders when in fact he had not. After reviewing the final orders prepared by Parlari's counsel, the trial court made a few changes and then signed and entered the final documents.

Amaral moved for reconsideration of the court's final orders, including a request to amend and to make additional findings of fact and conclusions of law. In response, Parlari's counsel advised the trial court that his office may have contributed to the confusion about the original presentation date and that Amaral's counsel did not receive a copy of the proposed findings prior to the presentation hearing as Parlari's counsel had previously stated. For these reasons Parlari's counsel requested that the court allow Amaral to make his arguments regarding presentation anew, without considering the timing and without prejudice to him in regard to the presentation date. Following these arguments, the trial court denied Amaral's post-trial motions.

Here, the final orders were entered in violation of CR 54(f). However, Amaral has not shown that the error prejudiced him. He presented his own proposed findings and conclusions of law to the trial court on a motion for reconsideration,[12] which were considered and rejected by the trial court. And he did not allege in the trial court below or in this appeal that the final orders drafted by Parlari's counsel and signed by the court were inaccurate. Accordingly, we conclude that the final orders are valid and Amaral's claim fails.

---

[12] Amaral sought proposed amendments and additional findings that were not part of the trial court's oral ruling.

13. Parlari's Violation of Court Orders

Amaral argues that the trial court erred by failing to require Parlari to comply with its April 23, 2010 order to (1) obtain a domestic violence assessment, (2) provide a full copy of her 2005 psychological evaluation, and (3) obtain a drug and alcohol evaluation. According to Amaral, Parlari never complied with the trial court's orders. Parlari did provide her 2005 psychological evaluation as ordered. Amaral has not provided us with the full record, but from the available record it appears that Parlari did not obtain a domestic violence assessment or a drug and alcohol assessment as she was required to do.

Amaral argues that Parlari's failure to comply with the trial court's order and the trial court's failure to address this issue prejudiced his case and deprived the trial court of vital evidence. But Parlari's failure to follow the trial court's order is not an error attributable to the trial court and not something we can review or grant relief for. We defer to the trial court's determinations of the persuasiveness of evidence, *In re Knight*, 178 Wn. App. 929, 937, 317 P.3d 1068 (2014), including the amount of significance to attribute to Parlari's (and Amaral's) failure to submit to the trial court ordered assessments. Accordingly, Amaral's claim fails.

14. Improper Family Law Motion

After the GAL filed her final report, Parlari moved to adopt the GAL's recommendations, specifically including that Amaral submit to a complete psychological evaluation, that the children see a counselor twice a month, and that someone review Amaral's complete criminal history and the lawsuits he filed against a Lakewood police officer. According to Amaral, the motion was brought on the "Family Law Motion Calendar" on April 19, 2012. Br. of Appellant at 41. A hearing occurred on that date in which evidence was presented by declaration and the

21

trial court granted Parlari's motion. The record provided to us on appeal, however, does not include Amaral's response to the motion, if any, or the transcript of the hearing. Our record includes only a written order granting Parlari's motion and ordering Amaral to submit to a psychological evaluation and that the children immediately commence counseling sessions twice a month.

Amaral contends the trial court's order was erroneous because "the purpose of a Family Law motion is to preserve the status quo, not make final rulings." Br. of Appellant at 41. He further argues that he "had the right to a trial, with live witnesses, on the issues decided at this hearing." Br. of Appellant at 41. We do not review Amaral's assignment of error because the record is insufficient for review, he cites no authority to support his claim of error, there is no record showing that he preserved this issue before the trial court, and the order at issue was mooted by the entry of the final parenting plan. RAP 2.5(a), 9.2, 10.3(a)(6); *Tracy*, 158 Wn.2d at 691; *Cowiche Canyon*, 118 Wn.2d at 809; *Simmons*, 61 Wn.2d at 149; *Stiles*, 168 Wn. App. at 259.

B.     FINDINGS OF FACT AND CONCLUSIONS OF LAW

We review the trial court's findings of fact and conclusions of law to determine whether substantial evidence in the record supports the findings and, if so, whether the findings support the trial court's conclusions. *In re Marriage of Fahey,* 164 Wn. App. 42, 55-56, 262 P.3d 128 (2011). If substantial evidence supports the trial court's findings of fact, we will not disturb them on appeal. *J.A.F.*, 168 Wn. App. at 667. "Substantial evidence exists if the record contains evidence of a sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise." *Fahey*, 164 Wn. App. at 55. "Even where the evidence conflicts, a reviewing

22

court must determine only whether the evidence most favorable to the prevailing party supports the challenged findings." *State v. Black*, 100 Wn.2d 793, 802, 676 P.2d 963 (1984). We defer to the trial court's determinations on the persuasiveness of the evidence, witness credibility, and conflicting testimony. *Knight*, 178 Wn. App. at 937.

Amaral assigns error to many of the trial court's findings of fact. Unfortunately, the trial record he provided to us on appeal is incomplete. For example, he has not provided us with a record of the testimony of all of the witnesses. Instead, our record includes only the testimony of Amaral, Parlari, and the GAL. But there are direct references to the testimony of at least three other witnesses: (1) a kindergarten teacher, (2) Amaral's former girlfriend, and (3) a woman named Rolinda who was the children's caretaker and former neighbor of the parties when they lived in Tacoma.[13] And there are indications that other witnesses may have testified as well.

In such a situation, our ability to fairly evaluate the findings in light of the record before the trial court is compromised. Therefore, we treat the findings as verities. *See In re Parentage & Custody of A.F.J.*, 161 Wn. App. 803, 806 n.2, 260 P.3d 889 (2011) (treating findings as verities where the court was not provided with any of the exhibits admitted at trial nor with a record of the testimony of numerous witnesses), *aff'd*, 179 Wn.2d 179, 314 P.3d 373 (2013). "This approach to appellate review of trial court factual determinations is one of long standing."

---

[13] During Parlari's testimony, counsel asked her, "Now, you heard the kindergarten teacher, that very nice Mrs. Johnson that testified, right?" RP at 409. Parlari's counsel also asked her about "the woman that just testified, Rolinda," who was a neighbor and the children's caretaker when the parties lived in Tacoma. RP at 374. And in its oral findings of fact, the trial court made findings based on the "the testimony of a past schoolteacher and a former girlfriend now testifying that she is simply a friend, *they* have testified . . . based on *their* observations." CP at 691 (emphasis added).

*A.F.J.*, 161 Wn. App. at 806 n.2. Therefore, we cannot and will not review Amaral's challenges to the findings of fact.[14]

C.    FINAL PARENTING PLAN

We review a trial court's decisions on the provisions of a parenting plan for an abuse of discretion. *In re Custody of Halls*,126 Wn. App. 599, 606, 109 P.3d 15 (2005). A trial court abuses its discretion if the decision rests on unreasonable or untenable grounds. *Halls*,126 Wn. App. at 606.

1.    Residential Placement

Amaral argues that the GAL's breach of her duties and the trial court's errors caused the court to enter flawed findings and to enter the wrong parenting plan. In particular, he argues that the trial court's conclusion that it would be in the best interest of the children to reside primarily with Parlari is incorrect. And he challenges the trial court's designation of Parlari as the primary residential parent in the final parenting plan.

Decisions regarding residential placement must be made in the best interests of the children after considering the factors set forth in RCW 26.09.187(3). *In re Parentage of J.H.*, 112 Wn. App. 486, 492-93, 49 P.3d 154 (2002). We review a trial court's decision regarding the residential placement of children for an abuse of discretion. *J.H.*, 112 Wn. App. at 492. "A trial court abuses its discretion only if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." *In re Parentage of Schroeder*, 106 Wn. App. 343, 349, 22 P.3d

---

[14] Amaral appears pro se in this appeal. The law does not distinguish between litigants who elect to proceed pro se and those who seek assistance of counsel. *In re Marriage of Olson*, 69 Wn. App. 621, 626, 850 P.2d 527 (1993). All litigants must comply with applicable statutes and rules. *In re Pers. Restraint of Connick*, 144 Wn.2d 442, 455, 28 P.3d 729 (2001).

1280 (2001). Because the trial court hears evidence firsthand and has a unique opportunity to observe the witnesses, the appellate court should be " 'extremely reluctant to disturb child placement dispositions.' " *Schroeder*, 106 Wn. App. at 349 (quoting *In re Marriage of Schneider*, 82 Wn. App. 471, 476, 918 P.2d 543 (1996), *overruled on other grounds by In re Marriage of Littlefield*, 133 Wn.2d 39, 50, 57, 940 P.2d 1362 (1997)).

Here, the trial court weighed the evidence presented at trial and properly applied the statutory factors in RCW 26.09.187(3)(a). Although Amaral disagrees with the trial court's decision, we will not second guess the trial court's well-supported analysis. We hold that the trial court did not abuse its discretion in (1) concluding the children's best interests would be served by residing primarily with Parlari, and (2) designating Parlari as the children's primary residential parent in the final parenting plan.

2. Contact with Benedetti

Amaral argues that the trial court failed to restrain Parlari from allowing her friend Benedetti to have contact with the children. During the trial court's oral ruling at the conclusion of trial, Amaral renewed his request to restrain Benedetti's contact. The trial court declined to do so and stated that it did not have any evidence that Benedetti's contact with the children had been negative in any way.

Amaral disputes this and argues that the trial court erred by not restricting contact with Benedetti. For support, Amaral points to Benedetti's Whitman County parenting plan, which restricts time with his daughter to supervised visitation based on his history of domestic violence, the GAL's recommendation that Benedetti not have unsupervised contact with HAA due to the

Whitman County restrictive parenting plan, and psychologist Loren McCollom's alleged finding that harm was caused to HAA from his contact with Benedetti.

First, Amaral misconstrues McCollom's findings. McCollum expressed serious concern for HAA due to having three father figures: Amaral, Benedetti, and Parlari's live-in boyfriend. But there was no finding that Benedetti's character was a cause for concern. Second, neither the Whitman County records nor McCollom's letter were admitted at trial. The GAL's report recommending that contact should be restricted was admitted at trial, and she reiterated her concern at trial, but her opinion was based on only the Whitman County records, which did not relate to the Amaral children and were not before the court at trial. Amaral does not direct us to any evidence before the trial court that the Amaral children's contact with Benedetti had been negative. Therefore, substantial evidence (or lack of it) supports the trial court's finding that there was no evidence of negative contact between Benedetti and the Amaral children. Accordingly, we hold that the trial court did not abuse its discretion in refusing to make a restriction on contact between Benedetti and the Amaral children in the final parenting plan. *See Halls,*126 Wn. App. at 606 (provisions of parenting plans are reviewed for abuse of discretion).

D. ATTORNEY FEES

Amaral argues that the trial court erred by failing to award him attorney fees based on Parlari's "dilatory, intransigent, and contemptuous conduct" throughout the case.[15] Br. of

---

[15] For example, Amaral asserts that Parlari did not respond to a single one of his 25 motions, failed to obey court orders, failed to produce evidence, failed to cooperate with court-ordered visitation, insisted on unnecessary supervised visitation that he had to pay for, and falsely accused him of rape. Amaral states that Parlari's actions forced him to bring four motions for contempt and a motion for an order to compel answers to discovery.

26

Appellant at 30. An award of attorney fees must be based on contract, statute, or a recognized ground in equity. *Kaintz v. PLG, Inc.*, 147 Wn. App. 782, 785, 197 P.3d 710 (2008). We review a trial court's denial of attorney fees for an abuse of discretion, which occurs if the court bases its denial on untenable grounds or untenable reasons. *Emmerson v. Weilep*, 126 Wn. App. 930, 940, 110 P.3d 214 (2005).

Although Amaral does not direct this court to the information, our independent review shows that he requested attorney fees at least in his motion for summary judgment on the parentage issues and in his trial brief before trial on the final parenting plan. The trial court reserved a finding of costs and fees on the summary judgment motion. And the trial court's findings of fact and conclusions of law on the final parenting plan states "[d]oes not apply" under a section for costs and fees. CP at 682. Amaral argues that he incurred substantial attorney fees due to Parlari's conduct, and that the trial court erred by not awarding him reasonable attorney fees and costs.

It appears that the trial court did not make an adequate record of the reason for its denial of Amaral's request for fees. However, because Amaral did not provide the trial court with any authority supporting his requests for attorney fees and did not provide authority supporting a fee award in his briefing to this court, we hold that the court's denial of his request was not an abuse of discretion.

E. INSUFFICIENT ARGUMENT/AUTHORITY

Amaral also assigns error to various other orders and memoranda of journal entries, including temporary orders granting supervised visitation and allocating the cost to Amaral, an order denying his motion for recusal of Judge Culpepper, an order denying his motion for

27

43920-4-II

contempt, an order denying his post-trial motions, and the final order of child support. But he does not provide argument or authority to support those assignments of error. Therefore, we do not review them. RAP 10.3(a)(6); *Cowiche Canyon*, 118 Wn.2d at 809; *Elliott*, 114 Wn.2d at 15.

F.    NEW ARGUMENTS IN REPLY BRIEF

Amaral raises two new arguments in his reply brief: (1) substantial evidence does not support the trial court's findings on the reason it took four years to bring the parentage case to trial, and (2) the GAL was not qualified to serve as a GAL during the pendency of his case because she resigned in 2009 and the Pierce County Superior Court refused to act on his grievances about the GAL. Issues raised and argued for the first time in a reply brief are too late to warrant consideration. *Cowiche Canyon*, 118 Wn.2d at 809. Therefore, we do not review them.

G.    ATTORNEY FEES ON APPEAL

Parlari requests an award of reasonable attorney fees under RAP 18.9, asserting that Amaral's appeal is meritless. But Parlari does not argue how Amaral's appeal is meritless, does not respond to the majority of his assignments of error, and does not provide argument and citation to authority to establish that the award is warranted. Therefore, we agree with Amaral that Parlari's request for fees is inadequate to support an award of attorney fees on appeal. *See* RAP 18.1; *Phillips Bldg. Co. v. An*, 81 Wn. App. 696, 704-05, 915 P.2d 1146 (1996). Moreover, although Amaral's appeal was unsuccessful, it was not wholly meritless. Accordingly, we deny Parlari's request for reasonable attorney fees on appeal.

Amaral also requests that he be awarded all of his attorney fees and costs incurred in this action. But Amaral's bare request for fees in the conclusion section of his briefs is also not

28

an adequate request for fees and will not be considered by this court. Under RAP 18.1, a party must cite authority for a fee request and set it out in a separate section of his opening brief. Accordingly, we do not consider Amaral's request for fees.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record pursuant to RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

BJORGEN, A.C.J.

HUNT, J.